Saul Moskoff, J.
Respondent herein, Barbara Franz, is a woman whose sincerity, and concern for her children is not under question. Her wisdom and judgment as to the best interest of the child, however, are open to question. Nevertheless, Mrs. Franz, on the petition of Ray Shipman, an attendance teacher for the New York City Board of Education, is charged with neglecting her youngest child, John, in failing to send him to the public school since September 9, 1974, and further failing to provide him with appropriate equivalent education.
These alleged acts of omission by Mrs. Franz, if established, are in violation of section 1012 (subd [f], par [i], cl [A]) of the Family Court Act, which defines a neglected child as follows: " 'Neglected child’ means a child less than eighteen years of age
"(i) whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent or other person legally responsible for his care to exercise a minimum degree of care
"(A) in supplying the child with adequate food, clothing, shelter or education in accordance with the provisions of part one of article sixty-ñve of the education law”. (Emphasis supplied.)
The applicable portions of article 65 of the New York State Education Law are as follows:
Section 3205 (subd 1, par a): "In each school district of the state, each minor from six to sixteen years of age shall attend upon full time instruction.” (Emphasis supplied.)
*916 Subdivision 1 of section 3204: "Place of instruction. A minor required to attend upon instruction by the provisions of part one of this article may attend at a public school or elsewhere.”
Subdivision 2 of section 3204: "Quality and language of instruction; textbpoks. Instruction may be given only by a competent teacher. In the teaching of subjects of instruction prescribed by this section, English shall be the language of instruction, and text-books used shall be written in English, except that for a period of three years * * * from the date of enrollment in school, pupils who, by reason of foreign birth, ancestry or otherwise, experience difficulty in reading and understanding English, may, in the discretion of the board of education, board of trustees or trustee, be instructed in all subjects in their native language and in English. Instruction given to a minor elsewhere than at a public school shall be at least substantially equivalent to the instruction given to minors of like age and attainments at the public schools of the city or district where the minor resides. "(Emphasis supplied.)
The court notes with reference to the last-quoted paragraph that the standard of instruction and therefore, necessarily the subject matter to be taught must conform to that of the local school board in order to establish equivalency under the statute.
Section 3204 (subd 3, par a, cl [1]): "The course of study for the first eight years of full time public day schools shall provide for instruction in at least the twelve common school branches of arithmetic, reading, spelling, writing, the English language, geography, United States history, civics, hygiene, physical training, the history of New York state and science.”
Subdivision 2 of section 3210: "Attendance elsewhere than at a public school, a. Hours of attendance. If a minor included by the provisions of part one of this article attends upon instruction elsewhere than at a public school, he shall attend for at least as many hours, and within the hours speciñed therefor. "(Emphasis supplied.)
Mrs. Franz raises the affirmative defense that she is providing John with an equivalent education at home by means of her personal tutoring. In support of her position, she has marshaled an impressive list of witnesses to testify to the efficacy of her methods and the competence of her instruction. The petitioner has responded with no small effort, in calling witnesses of equally expert credentials in an attempt to prove *917 that Mrs. Franz’ education of her child is inadequate within the meaning of the statutes.
It is for this court to determine, in weighing the testimony of the experts brought before it, whether, in fact, Mrs. Franz is meeting the requirements of the law in her tutorial program for her son. If the court were to find that the requirements of equivalency are not met, it must sustain the allegations of the petition.
For the purposes of determining the equivalency of the education the child is receiving, the court finds that there are three main aspects of John’s instructional experience which must be separately analyzed: i.e., (1) Mrs. Franz’ qualifications as a teacher (Education Law, § 3204, subd 2: "Instruction may be given only by a competent teacher”); (2) the extent, if any, to which the lack of social intercourse with other children, in itself, deprives John of an equivalent education; and (3) assuming (1) and (2) are disposed of in favor of the respondent, whether the child is, in fact, receiving an equivalent education by means of the materials, curriculum, and methodology provided by Mrs. Franz.
The leading case in this jurisdiction on equivalency of home education is People v Turner (277 App Div 317). Therein, the court held (p 319): "There is no provision in the Education Law which prohibits instruction of children at home, nor is there any provision requiring certification of a parent by the Commissioner of Education before she may teach her children at home.”
The court also finds persuasive the opinion of our neighboring jurisdiction in State v Massa (95 NJ Super 382). Mrs. Massa, who elected to instruct her daughter in her home and not send her to the public schools, presented to the court by way of qualifications, only a high school diploma. The court found that so long as the education program administered by Mrs. Massa was equivalent in all other aspects, no formal qualification or certification as a teacher was required.
"The prosecutor stipulated, as stated above, that the State’s position is that a child may be taught at home and that a person teaching at home is not required to be certified as a teacher by the State for the purpose of teaching his own children. Had the Legislature intended such a requirement, it would have so provided.” (State v Massa, supra, p 389.)
The court finds that Mrs. Franz need have no formal qualification in order to be deemed a qualified teacher within *918 the meaning of the appropriate statute. Mrs. Franz can prove her competence by objective evidence. To this purpose, she introduced the testimony of Samuel Blumenfeld, a professional writer and researcher in the field of education. The court, upon voir dire examination, concluded that Mr. Blumenfeld’s testimony was entitled to be admitted into evidence as expert testimony based on long years of independent research and study which have characterized his career. (See Richardson, Evidence [10th ed], § 368.)
Mr. Blumenfeld, who has written guides and evaluations of the skills involved in tutoring, qualified Mrs. Franz as able and competent to tutor her child in the basic learning skills of reading and math. His testimony was based on his personal observations of Mrs. Franz and John.
The respondent also called to the stand the eminent Dr. Raymond Moore, a developmental psychologist and educator with a world-wide reputation. Dr. Moore also testified favorably as to Mrs. Franz’ instructional competence with her child. The expert testimony introduced by the petitioner as to respondent’s teaching ability was presented in general terms as to the need for formal training for teachers and without benefit of personal observation of respondent’s performance. In weighing the testimony and the qualifications of the various experts, this court concludes that the respondent has sustained her burden of objectively proving her competence to provide an education for the child elsewhere than in a public school.
The second element of equivalency is the question of whether, under any circumstances, an education at home for a child cannot be equivalent to that in a school setting because of the lack of peer-group relationships.
The absolute inferiority of any such education deprived of social interaction, was a major portion of the petitioner’s case, as introduced by petitioner’s expert witness, Dr. Vorwald, an experienced and qualified school administrator. Dr. Vorwald’s opinion was concurred in unequivocally by Mr. Samuel Rabinoff, Principal of Public School 207, Queens, also called as a witness for petitioner.
A totally contrary opinion was expressed by Dr. Moore, called for the respondent, who is a leading national proponent of raising the required age at which children commence formal schooling. Dr. Moore testified to what he considered to be the prevailing over-emphasis on the need for peer-group *919 relations, in children aged six through eight, in many educational systems.
The court would have a difficult time weighing and balancing the expert testimony of such an impressive list of professionals brought before the bench in the case at bar. The court finds, however, that the decision can be based on the law as it stands, without the need of evaluation of the educational impact of the conflicting schools of thought.
To hold that lack of peer-group relationships is an indispensable element to an equivalent education, would be to hold, in effect, that education of a child in the home by a parent is totally precluded. This, in the judgment of the court, was not the intent of the Legislature.
"There is no provision in the Education Law which prohibits instruction of children at home * * * The object of a compulsory education law is to see that children are not left in ignorance, that from some source they will receive instruction that will fit them for their place in society. Provided the instruction given is adequate and the sole purpose of nonattendance at school is not to evade the statute, instruction given to a child at home by its parent, who is competent to teach, should satisfy the requirements of the compulsory education law. (See Wright v State, 21 Okl Cr 430; People v Levisen, 404 Ill 574).” (People v Turner, 277 App Div 317, 319-320.)
The New Jersey statute is similar to our own. (See NJSA § 18:14-14 as quoted in State v Massa, 95 NJ Super 382, supra, now § 18A:38-25.) The relevant portion has been interpreted in State v Massa, supra, in such manner as to reject the peer-group theory of equivalency, as propounded in the case at bar.
"In Knox v O’Brien, 7 N. J. Super. 608 (1950), the County Court interpreted the word 'equivalent’ to include not only academic equivalency but also the equivalency of social development. This interpretation appears untenable in the face of the language of our own statute and also the decisions in other jurisdictions.
"If the interpretation in Knox (supra) were followed, it would not be possible to have children educated outside of school. Under the Knox rationale, in order for children to develop socially it would be necessary for them to be educated in a group. A group of students being educated in the same manner and place would constitute a de facto school. Our statute provides that children may receive an equivalent *920 education elsewhere than at school. What could have been intended by the Legislature by adding this alternative?
"The Legislature must have contemplated that a child could be educated alone provided the education was equivalent to the public schools. Conditions in today’s society illustrate that such situations exist. Examples are the child prodigy whose education is accelerated by private tutoring, or the infant performer whose education is provided by private tutoring. If group education is required by statute, then these examples as well as all education at home would have to be eliminated.” (State v Massa, supra, p 387.)
Having determined that Mrs. Franz is not precluded by law from educating the child at home and that the peer-group association factor is not relevant to the question of equivalency, this court must next determine whether in light of all other statutory requirements, John Franz is receiving an adequate education. Unhappily, the court must conclude that he is not. In Matter of Thomas H. (78 Misc 2d 412), a case with a fact situation similar to the one at bar, the court came to a similar conclusion after sifting the evidence of the actual curriculum and manner in which it was administered. In Thomas H, a finding of neglect was made even though, as in the case at bar, the parents were found competent to teach, and even though the peer-group association factor was never raised.
"The proof here shows a lack of consistent quality in subject instruction, if not an absence of instruction in some areas and it shows the absence of a systematic approach to the course of study of the branches specified in the statute and regulations. These instructions are not adequate and the program, viewed as a whole, constitutes an attempt to evade the Compulsory Education Law.” (Matter of Thomas H., supra, p 419.)
The words of the above quoted paragraph might be adopted verbatim in the case at bar. Mrs. Franz testified that she instructed John in a formal setting only one to one and one-half hours per day. This is clearly in violation of subdivision 2 of section 3210 of the Education Law, requiring attendance for at least as many hours as required by the public schools.
Much testimony was given by Mrs. Franz in terms of how much John learned from every day experiences. Little was elicited from the mother as to systematic planning of the daily curriculum or application of such a plan. She testified that she does not outline her daily program more than a few hours in *921 advance. If John displays particular interest in a subject, she dwells upon that subject in particular at the expense of other subjects.
Section 3204 (subd 3, par a, cl [1]) of the Education Law delineates specific subject matter to be covered in the course of study and the board of education has detailed curricula guides for the study of each subject in each grade. Mrs. Franz’ testimony was very vague as to the extent to which each of these subjects was systematically taught. She said that she related science and history to John through his writing, but she was not specific. As to lessons in hygiene, Mrs. Franz pointed to John’s daily exercise of habits of personal cleanliness under her supervision, as his hygiene curriculum.
The mother offered no testimony as to her attempts to obtain copies of the New York City Board of Education curricula guides in various subject areas, or to comply with such guides in her instruction. Some showing of an attempt to follow the curricula of the local board of education is clearly mandated by subdivision 2 of section 3204 of the Education Law, which says in part as follows, "Instruction given to a minor elsewhere than at a public school shall be at least substantially equivalent to the instruction given to minors of like age and attainments at the public schools of the city or district where the minor resides.”
Considerable testimony was elicited by the respondent from Dr. Moore on the adverse effects of requiring children under eight years of age to attend school in a formal setting on a regular basis. Dr. Moore has conducted extensive research and has written and lectured widely on this subject. Dr. Moore’s work has led him to the conclusion that children, particularly males, are best kept out of a formal school setting until after their tenth birthday, and in the alternative should be maintained in a "warm, responsive, loving home.”
Dr. Moore’s work has had marked influence in many areas of public instruction, particularly in Arizona, where, as a direct result of Dr. Moore’s work, the starting age for compulsory instruction is eight years of age.
In rebuttal, Dr. Vorwald testified that by presently depriving John Franz of an education in a formal setting with licensed teachers, his entire future development could be adversely affected.
However, this court does not intend to put itself in the position of making a decision as to which theory ought to *922 prevail. The Legislature has spoken on the subject, requiring full-time attendance between the ages of 6 and 16 years (Education Law, § 3205). When Dr. Moore’s work has convinced our own Legislature, as he has influenced that of Arizona, this court will, of course, be constrained to rule differently. Until that time, we must apply the clear mandate of the Legislature as it stands.
The court notes, in passing, that Dr. Moore related that his own formal education began at age five. His subsequent career gives little evidence of lasting damage as a result of that experience.
Extensive time and verbiage was also expended on the various methods of instruction. Mr. Blumenfeld testified to the prevalence of the "look-say” methods of language arts instruction in the public schools. It was his opinion that this method is harmful and confusing to a child. He advocated, instead, the phonics method of instruction which is more practically geared to the alphabet. He has written widely on the topic and his books have been a significant factor in Mrs. Franz’ pedagogic training. Mr. Rabinoff, Principal of Public School 207, testified that a number of methods, including the phonics method, were used to teach in the public school.
Again, the court will not adorn itself with the mantle of expertise required to pass upon the efficacy of educational methodology. The statutes are clear as to what is required. If the child is receiving adequate instruction in all the subject areas required under the law for the periods of time required, the law is satisfied. This court has concluded that the law is not satisfied in the present case.
Notwithstanding the apparent but misguided good intentions and honest motivations of the mother, the court finds that John Franz is a neglected child within the meaning of the statute.
The court is grateful to the attorneys for the petitioner and the respondent and Law Guardian for the child for their capable representation of their respective clients and their zealous and ethical presentations of their clients’ positions.
Probation is directed to investigate and report.