Leon Deutsch, J.
This is a consolidated motion for discovery brought by the respondents pursuant to CPLR 3120 and in defense of PINS petitions filed against them by the Board of Education alleging them to be habitual truants pursuant to section 711 of the Family Court Act. The motion seeks to compel the petitioner to furnish respondents with certain documents and information relating to the adequacy or suitability of the educational program at IS 292. The respondents contend: (1) that the education offered to them is "inadequate” and "unsuitable”, (2) that they will therefore be deprived of "due process” if they are subjected to a form of "confinement” by virtue of the compulsory education law and (3) further deprived of "due process”, if they were, in such case, to be adjudicated pursuant to section 711 of the Family Court Act as PINS (persons in need of supervision) because of habitual truancy.
The supporting affidavits made by the attorneys upon information and belief claim, in general, that conditions at the school are chaotic; that the education is "inadequate”, and that there are crime and numerous fights around the school, and that the safety of students is endangered at the school.
The respondents’ discovery demands are wide-ranging and extensive. They seek: (1) attendance statistics at IS 292 from September, 1974 to the present including numerous breakdowns of such data; (2) statistical computations showing the number of PINS petitions filed against IS 292 students for truancy since September, 1974 including, various and numerous breakdowns of such data; (3) reading and math scores of different groups of children; (4) statistical computations of all personnel of the school by sex, race, and educational background; (5) survey of the present whereabouts of the 1974 and *315 1975 eighth grade class; (6) to allow two outside educational experts for the respondents to enter upon IS 292 for the purpose of inspecting the school and interviewing teachers, clerks and students and (7) various statistics and data relating to crime committed in the vicinity of the school perpetrated by students and comparative figures for other schools.
The petitioner seeks a protective order to vacate respondents’ motion for discovery contending that such discovery is inappropriate to the instant proceeding and that there is no relevancy insofar as the only issue is whether the respondents were or were not absent without leave or appropriate excuse.
At the outset, this court must disagree with petitioner’s argument that the discovery provisions of the CPLR are inapplicable. Under section 165 of the Family Court Act this court relies on the CPLR "to the extent that they are appropriate to the proceeding involved.” Despite the lack of rules or provisions governing such procedures in the Family Court, the CPLR was held to control discovery. (Matter of Carla L., 45 AD2d 375.) Petitioner cited Matter of Edwin R. (60 Misc 2d 355) for the proposition that the time consuming procedures of the CPLR are not suitable in the statutory and practical framework of the Family Court. However, that case specifically holds that discovery is available to juvenile respondents. Certainly, constitutional due process — for example, the right to counsel — would be meaningless without discovery rights. See, too, Matter of Carolyn D. (65 Misc 2d 752) where it was held that the provisions of the CPLR may be used in appropriate cases. Assuming that the purported defense herein was real, and made in good faith, and that the supporting affidavits supplied a reasonable basis therefor, discovery pursuant to the CPLR would be the only adequate way of getting that which is sought.
The petitioner, further, argues that this court is the wrong forum for the nature of the remedy sought by the issues raised in defense of the PINS proceeding. The petitioner contends that the respondents must seek injunctive or declaratory relief for the issues raised by their proposed defense.
It is not for the petitioner to tell the respondents what their defense is to be, nor to advise respondents to raise the issue in another forum wherein "the adequacy of the educational program at IS 292 is the issue.” Assuming arguendo, the bona ñdes of such a defense, what better forum than the Family Court? Petitioner argues, curiously that the respondents’ re *316 quest is "particularly inappropriate in light of the fact that no case cited by respondents has recognized such a defense in a PINS proceeding.” Indeed, this does seem to be a first. If petitioner, however, were serious in such contention, there would never be a dynamic development of the law.
There is nothing in sections 711 or 712 of the Family Court Act which limits respondents to the single and exclusive defense which asserts a denial to petitioner’s claim that they were absent a certain number of days without recognized school excuse. Nor can the respondents be deprived of their right to interpose a defense involving constitutional rights. If the board may assert its powers to enforce the compulsory nature of the Education Law, as it must, it cannot thereby limit the court’s powers to consider a defense of noneducation, assuming the bona tides thereof. (See Matter of Skipwith, 14 Misc 2d 325.)
The respondents, be it noted, are not challenging the constitutionality of the Education Law; nor the power or duty of the State to enforce the compulsory feature thereof; nor the power of the petitioner to bring a PINS proceeding pursuant to section 711 of the Family Court Act. What they say to the petitioner, in effect is: "You may compel us to go to school. You have the duty to educate us. And we have the right to an education. But, if you compel us to go to a building denominated a school, you cannot keep us there without educating us, nor permit a climate or situation where education is so 'inadequate’ as to be non-education. If you do that, then you are suffering us to a 'confinement’ in denial of constitutional due process. And in that event, we cannot be adjudicated as PINS, even if we are habitually truant.”
(We should note here, parenthetically, that the respondents have offered and constructed an analogy between their purported defense, and a line of cases dealing with due process rights to treatment upon confinement, wherein it is held that a failure to provide treatment or therapy when the purpose of such confinement was treatment or therapy, is a violation of due process. [See O’Connor v Donaldson, 422 US 563; Martarella v Kelley, 349 F Supp 575.] Inasmuch as we have already determined that the respondents may raise as a defense, if they can, in good faith, "inadequate” education or noneducation — however remarkable or extraordinary such defense may be — we need not reach this argument.)
One may construct a theoretical set of circumstances, no *317 matter how improbable, which would make for such "inadequacy” or "unsuitability” of educational program as to be tantamount to effectual "confinement” and hence a deprivation of due process. Assume, arguendo, that the notorious fiscal and budget crisis were such as to cause an outrageous cut in the instructional staff by 75% (to put an arbitrary and outlandish figure on it for the sake of the hypothesis) — clearly, the result might well be noninstructional, a "baby-sitting” operation and a noneducational "confinement”. Or, assume, arguendo, that there were a strike, whether authorized or wildcat, which emptied or nearly emptied the school of teaching staff, and the school principal, or District Superintendent or Chancellor ordered, however absurdly, that the children must appear or be considered as truant. That, too, might well be in the nature of a "confinement”.
Of course, we are not here dealing with theoretical constructions. Nor do such hypothetical examples, as above, apply to the instant matter. What we are dealing with are definitive claims of individual respondents, charged with habitual truancy, in the nature of a purported affirmative defense. Such claims must appear to be real, reasonable and offered in good faith.
However that may be, having concluded that the respondents have a right to (1) raise and establish, if they can, a defense to a PINS proceeding of alleged "inadequacy” of education so as to be tantamount to a "confinement” and hence a violation of due process and (2) that they have a general right to discovery proceedings, we must, nevertheless, consider what is being sought to be discovered, the relevancy thereof, the inherent bona ñdes, the total realities as they confront us, and whether the information sought is material and necessary to the defense of the action. (See Allen v Crowell Collier Pub. Co., 21 NY2d 403.)
In Allen v Crowell-Collier Pub. Co. (supra) the Court of Appeals did indicate that the words "material and necessary” are to be interpreted liberally. It also indicated that the court has a wide discretion to decide whether information sought is material and necessary to the prosecution or defense of an action. It further held that the test is one of usefulness and reason; that the discovery should be sufficiently related to the issues in litigation to make effort to obtain it in preparation for trial reasonable. The court further indicated, by way of citing with approval from Matter of Comstock (21 AD2d 843), *318 that the information must be sought in good faith. (See, also, State of New York v De Groot, 35 AD2d 240.) The Allen case (supra) dealt with CPLR 3101. The rule would not be different in relationship to CPLR 3120. (See 3A Weinstein-Korn-Miller, NY Civ Prac, par 3120.18, p 31-376.)
The respondents seek to conduct a broad and total attack upon the school in question. To justify such extraordinary and wide-ranging discovery, the respondents have an obligation, in the first instance, as above seen to persuade the court that such defense is raised in good faith, and may reasonably lie. It must appear, at least, on its face, that this is not an ingenious, if indeed, not a disingenuous excuse for old-fashioned truancy. For this purpose, we must look to the affidavit. (See State of New York v De Groot, supra.)
The affidavits must, at least, speak to the alleged "inadequacy” of the education at IS 292 and present some reasonable basis therefor. It takes little imagination to understand that the "adequacy” of one school is different from the "adequacy” of another, whatever the measuring rod. Principal, teaching staff, school board, district superintendent, physical facilities, geographical location, area socio-economic conditions, perhaps, the student body itself — all, and many more factors, create differences between schools. But, differences between schools are not the test. The claim is "inadequacy” of education, and therefore "confinement.” How is such "inadequacy” to be measured? Against the inadequacy of nothing, that is to say, not going to school? Absent some foundation which reasonably raises the question that the school program or school condition is essentially noninstructional, a court may reasonably assume that a student, even in a school which falls below the median (and this is not alleged) is educationally better served than without an education at all.
In any case, there is nothing in the affidavits to suggest that the respondents believe that they are getting no education at all or that they would be as well served with none at all. Nor do they claim that they would be better off with a program of self-education which is superior to the alleged "inadequacy” of what they receive at IS 292; nor, indeed, that they pursue such role or even intend to do so.
Do the respondents assert the right to an option or an alternative? Apparently not. There is no such assertion in the affidavits — neither for another school, nor for another school district. Nor do the affidavits indicate that such an alternative *319 would end their truancy. Neither do the affidavits indicate that any reasonable efforts were made by them in this regard with the school authorities. Nor that the school authorities unreasonably ignored such efforts. Neither is it asserted that private school is available to these respondents; nor that home instruction or other appropriate substitute education is available or is being pursued. The court takes note that, under certain circumstances, there is nothing in the law which prohibits home instruction as an alternative. (Education Law, § 3204, subds 1 and 2; People v Turner, 277 App Div 317; see, also, Matter of Franz, 84 Misc 2d 914.)
While speaking of options or alternatives, it is of interest that in Skipwith (14 Misc 2d 325, supra) and cited with favor by the respondents, the court there took careful note that there were alternatives. The court in that case, dismissed a neglect petition against parents who withheld their children from school in contravention of the Education Law. The court there held that the parents were constitutionally permitted to elect no education for their children rather than to subject them to discriminatively inferior education. But, the court also specifically found that the parents were doing whatever is within their means to provide an alternative education, though it may not meet the requirements of the Education Law. Moreover, and significantly, that was a case of neglect against parents, who, it is assumed, have control over their children. In these PINS petitions, it is these 13- and 14-year-old children who are alleged to be making an election of truancy. That is quite a difference! (Of course, were it otherwise, these parents might find themselves respondents in a neglect proceeding. Indeed, one of the petitions charges specifically that the alleged truancy is without the consent of the parent. It is also not without interest that none of these parents submitted a supporting affidavit. We note, too, that in Skipwith we were dealing with concerned parents who were in control, who were morally outraged at a situation, who had the courage of their moral and intellectual convictions, who were not encouraging truancy, and who were taking corrective measures.)
These motions also seek the broadest kind of discovery relative to general crime statistics and data in the school and surrounding area. Neither affidavit purports to show that any of these respondents individually suffered on such account. Nothing to indicate that their education has suffered or that *320 he or she individually has faltered because of this. Nothing to indicate that any of these respondents has been a victim; nor that he or she has been prevented from coming or going. Not a hint that they were deprived of classrooms, instructors, instruction, a process, of a criminal nature, that caused them to be deprived of an educational program. (The affidavit contains vague general allusions and some indefinite quotations from a few other students charged with truancy, about "fights” in and around the school. This affidavit also quoted these other students: "They also said that their teachers are mean to them”.)
In sum, these supporting affidavits are totally deficient, and fail to lay any foundation for such claimed "inadequacy” or "unsuitability” of educational program as to reasonably raise this as a defense for these particular respondents. Indeed, these affidavits raise serious doubts about the good faith of the respondents in their purported defense. The respondents have failed to meet the test prescribed in Allen of usefulness and reason. The respondents fail completely to justify the grant of discovery sought, and are not entitled to the favorable exercise of the court’s discretion.
Accordingly, the consolidated motion for discovery is in all respects denied.