OPINION OF THE COURT
George L. Cobb, J.
In this article 78 proceeding, a 15-year-old high school student seeks a judgment directing the respondents to rescind *567 their suspension of her from her Social Studies class and permitting her to take the final examination therein. After this Justice denied the respondents’ motion to dismiss the petition herein upon objections in point of law pursuant to CPLR 7804 (subd [f]), an evidentiary hearing was conducted before me. Because the date for the said final examination was fast approaching, I granted a judgment at the conclusion of that hearing which vacated her failure grade in the course, permitted her to return to school and directed that she be permitted to take the final examination therein, and at that time, I indicated that I would thereafter issue this memorandum which records my reasons for granting that judgment.
The infant petitioner, Wendy Blackman, attends Onteora High School and the records of that school indicate that during this school year she was illegally absent from school on at least 25 days and further indicate that on 23 days when she attended school she did not attend her Social Studies class. Wendy and her mother, the petitioner Lucy Blackman, do not concede that these figures are correct and testified that, although they did not so inform the school, a number of such absences were due to lawful excuse.
With certain exceptions not here pertinent, section 3205 (subd 1, par a) of the Education Law demands that, in each school district of this State, each minor from 6 to 16 years of age shall attend upon full-time instruction, and section 3210 (subd 1, par a) of the Education Law says that public school pupils shall so attend for the "entire time the appropriate public schools or classes are in session”. Since it is clear that Wendy on numerous occasions "cut” her Social Studies class and "skipped” school during this school year without proper excuse, Wendy is and was a truant.
Under such circumstances, the appropriate school officials could have arrested Wendy and forthwith have placed her "in attendance upon * * * instruction” pursuant to section 3213 (subd 2, par a) of the Education Law and they could also have instituted proceedings against her in the Ulster County Family Court pursuant to article 7 of the Family Court Act. Furthermore, said school officials could have considered whether or not a basis existed for court action against the adult petitioner, Lucy Blackman (see Education Law, § 3212, subd 2, par b; § 3212, subd 5, par a; §§ 3232, 3233; Family Ct Act, art 10; Matter of Franz, 84 Misc 2d 914, affd 55 AD2d 424). These respondents, however, chose to act pursuant to the *568 rule contained in the "Student-Parent Handbook” of Onteora Senior High School which provides, in pertinent part, that when any student is not meeting his academic responsibilities by "cutting” classes, certain notifications shall be given, certain conferences shall be had and if no lasting improvement results from these efforts, then, as a last resort, the student shall be removed from the class and given a failing grade in the course. In Wendy’s case, these procedures included a conference attended by Wendy, her mother and certain school officials, including Wendy’s Social Studies teacher, Mr. Lapo, wherein it was agreed that Wendy should have "one more chance” to attend the class with the proviso that if she "cut” the class again, she was "out” and would receive a failing grade. Since she did thereafter "cut” again, she was summarily suspended from the class and given a failing grade in the course whereupon she and her mother instituted this proceeding.
While, pursuant to subdivision 3 of section 1709 of the Education Law, local school authorities may "prescribe the course of study by which pupils of the schools shall be graded and classified” and may "regulate the admission of pupils and their transfer from one class or department to another, as their scholarship shall warrant”, there appears to be no express statutory authority for removing a pupil from a particular high school course for truancy, and, particularly, "constant” courses (see 8 NYCRR 100.1) which must be completed before graduation (see 8 NYCRR 100.2). Although subdivision 3 of section 3214 of the Education Law does authorize the suspension of pupils (1) who are insubordinate or disorderly, (2) who cannot benefit from instruction because of feeblemindedness, or (3) who pose a threat to the health, safety, morals or welfare of themselves or others, it seems unlikely that Wendy’s truancy could be fitted into any of these categories, and, in any event, that statute could not authorize this suspension because the preliminary procedures mandated by that statute have not been had.
In short, there appears to be no specific grant of authority from the sovereign to the respondents which authorized the promulgation by local school authorities of the above rule concerning student "cutting” and such authority should not be implied from any grant of general supervisory powers when the net effect is that a pupil who violates the compulsory education law often enough is excused from further compli *569 anee. The solution respondents chose for the problem of Wendy, then, rests upon an unauthorized rule and it cannot, therefore, stand.
The respondents emphasize that Wendy’s suspension occurred after she breached the commitment she and her mother made to school authorities that there would be no further "cutting” and say that this commitment constituted an enforceable agreement which bars this proceeding. As noted above, the said rule concerning "cutting” attempted to legitimatize continuing violations of the compulsory Education Law and the same may be said of any understanding of the parties which contemplated the same result. As noted in De Lease v Nolan (185 App Div 82, 84), "[t]he dominion of the State is absolute as far as attendance upon instruction is concerned [and] * * * [t]he consent of the parent to the absence of the child has no effect upon this lawful dominion of the State”. The local school authorities and these petitioners could not validly contract to subvert this State’s public policy as such is expressed in the compulsory education statutes nor could petitioners effectively waive the performance by school authorities of their statutory duty to enforce that policy. Accordingly, the said agreement is not an effective defense to this proceeding.
For all of the foregoing reasons, I heretofore granted the hereinabove described judgment in favor of the petitioner.