[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In a three count revised complaint, two minor school children, Neil Broadly, Timothy Croce ("the plaintiffs"), and their parents bring this action against the Meriden Board of Education, the Waterbury Board of Education, the Connecticut State Board of Education and its commissioner, Gerald Tirozzi, and the Connecticut Association of Boards of Education. The plaintiffs allege that they are "exceptional children" as defined in C.G.S. 10-76a(c)[1] and "children requiring special education" as defined in C.G.S. 10-76a(e)[2], that they have been so identified by their respective school districts, and that they have been denied access to special educational programs by the defendant school districts.
Each of the three counts are directed at all of the defendants. In the first count, the plaintiffs allege that the failure of the defendant boards of education to provide special educational services is a violation of article eighth, section 1
of the Connecticut Constitution, which guarantees free public elementary and secondary schools in the state. The second count incorporates the allegations of the first count, and alleges a violation of article 1, section 1 of the Connecticut Constitution, which guarantees equality of rights for all persons. The third count incorporates the allegations of the first, and alleges a violation of the equal protection clause of the Connecticut Constitution, article first, section 20. CT Page 7779
In their prayer for relief, the plaintiffs request an order requiring the defendant boards of education to provide special educational services for the plaintiffs and all other children entitled to special educational services under state law, and a judgment declaring C.G.S. 10-76d(b)[3] unconstitutional under the aforementioned provisions of the Connecticut Constitution.
Each of the defendants have filed answers and special defenses. In their answer, the defendant boards of education admit that the plaintiffs are "exceptional" children as defined in C.G.S. 10-76a(c), that they are "children requiring special education" in that they have "extraordinary learning ability" as those terms are defined in C.G.S. 10-76a(e), and that they have been so identified by their respective school districts. The defendants have asserted as special defenses lack of standing, non-justiciability, sovereign immunity, and separation of powers.
The plaintiffs have replied to the special defenses of each defendant. After the closing of the pleadings, each of the defendants filed a motion for summary judgment. In their memoranda in support of the motion, the defendants set forth four grounds: 1) that the Connecticut educational system satisfies the state's constitutional obligation to provide free public elementary schools; 2) that there is no right in Connecticut to an individualized education; 3) that Connecticut's educational plan does not impinge upon the plaintiff's rights and does meet an important state interest; and 4) that the Connecticut Constitution specifically leaves decisions regarding education up to the general assembly. The defendants' motion is accompanied by the plaintiffs' report cards, attached as exhibits A and B.
The plaintiffs have opposed the motion, and have filed a memorandum of law. The motion and memorandum are accompanied by a bibliography of articles on the subject of gifted education.
"Summary judgment is a method of resolving litigation when pleadings, affidavits and any other proof submitted show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Wilson v. New Haven, 213 Conn. 277, 279, 567 A.2d 829 (1989); Connecticut National Bank v. Great Neck Development Co., 215 Conn. 143, 148,574 A.2d 1298 (1990). "The moving party has the burden of showing the absence of any genuine issues as to all material facts, which under principles of applicable law entitle him to judgment as a matter of law." Fogarty v. Rashaw, 193 Conn. 442,445, 476 A.2d 582 (1984). "The test is whether a party would be entitled to a directed verdict on the same facts." Connell v. Colwell, 214 Conn. 242, 246-47, 571 A.2d 116 (1990), citing CT Page 7780 Batick v. Seymour, 186 Conn. 632, 647, 443 A.2d 471 (1982).
There are no factual issues in dispute. The parties' arguments focus primarily upon the issue of whether the defendants are entitled to judgment as a matter of law.
A. The First Count: The Right To A Free Public Education
In the first count of their complaint, the plaintiffs allege that their right to a free public education is being abridged by the defendant boards of educations' failure to provide them with "special education." The plaintiffs argue that the right to a free public education requires the school districts within the state to provide "real educational benefit" to all students, including gifted ones. The defendants argue that a program that is designed to advance students from grade to grade is constitutionally sufficient.
Article eighth, 1 states in its entirety that
 There shall always be free public elementary and secondary schools in the state. The general assembly shall implement this principle by appropriate legislation.
Under the Connecticut Constitution, the right to education is fundamental, and infringements upon this right are subject to strict judicial review. Horton v. Meskill, 195 Conn. 24, 35,486 A.2d 1099 (1985) ("Horton III")' Horton v. Meskill, 172 Conn. 615,648-49, 376 A.2d 359 (1977) ("Horton I"). Elementary and secondary education is a fundamental right, and pupils in the public schools are entitled to the equal enjoyment of that right. Campbell v. Board of Education, 193 Conn. 93, 105, 475 A.2d 289
(1984), citing Horton I, supra, 648-49. Although recognizing that infringements upon the fundamental right to education are subject to strict judicial review, the Horton cases do not require that strict scrutiny be applied to all governmental regulations affecting education, but only to those that impinge upon the plaintiff's right to "`a substantially equal educational opportunity' for Connecticut students in the state's `free public elementary and secondary schools.'" (Emphasis added.) Campbell v. Board of Education, supra, quoting Horton I, supra, 649. Thus, a school board policy that is "neither disciplinary nor an infringement of equal educational opportunity does not infringe any fundamental rights under our constitution." Campbell v. Board of Education, supra, 105.
The Horton cases and their progeny provide that the right CT Page 7781 to receive a free public education is a fundamental right, which must be provided to all eligible students on an equal basis and which may not lightly be abridged, but they do not support the plaintiffs' claims of constitutional entitlement to an particular type, style, or method of free public education. Similar conclusion was reached by the New York courts, which interpreting a similar provision in the New York Constitution have held that "[t]his general directive does not impose a duty flowing directly from a local school district to individual pupils to ensure that each pupil receives a minimal level of education." Bennett v. School District. 114 App.Div.2d 58, 6 (1985). "[T]he mere fact that the child is not permitted to attend the school of his choice is not tantamount to the denial of a right to an education." Id., 6. The mere fact that a child is not given the educational program of his or her choice does not impinge upon that child's right to a free public education.
The Connecticut Constitution expressly delegates the duty to implement the constitutional mandate to provide free public schools to the legislature. "The general assembly shall implement this principle [the provision of free public schools by appropriate legislation." Connecticut Constitution, article first, section 1. The complainants do not allege that the legislature has failed to carry out its constitutional mandate to provide a system of free public schools; in fact, the complaint makes clear that the plaintiffs are attending free public schools in their respective communities. Therefore, because the Connecticut Constitution does not require the defendants to implement any particular type of educational program, and because the plaintiffs have not set forth any evidence to show that their right to a free public education has been abridged, the motion for summary judgment is granted as to count one of the plaintiffs' revised complaint.
B. Counts Two and Three: Equal Protection
In count two the plaintiffs allege a violation of article 1
section 1 of the Connecticut Constitution, which guarantees equality of rights for all persons; count three incorporates the allegations of the first count, and alleges a violation of the equal protection clause of the Connecticut Constitution, article first, section 20. Both of these provisions have been interpreted as providing rights similar to those set forth in the equal protection clause of the fourteenth amendment to the federal constitution. See Zapata v. Burns, 207 Conn. 496,542 A.2d 700 (1988) ("equality of rights" provision of state constitution has meaning equivalent to equal protection clause contained in fourteenth amendment to the federal constitution). Brunswick Corp. v. Liquor Control Commission, 184 Conn. 75,440 A.2d 792 (1981) have the same meanings and the same limits). CT Page 7782 Because these constitutional provisions proceed under the same method of analysis, they will be analyzed together.
"`The concept of equal protection under both the federal and state constitutions has been traditionally viewed as requiring the uniform treatment of persons standing in the same relation to the governmental action questioned or challenged.'" Franklin v. Berger, 211 Conn. 591, 594, 560 A.2d 444 (1989), quoting Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432105 S.Ct. 3249, 87 L.Ed. 313 (1985); Daily v. New Britain Machine Co.,200 Conn. 562, 578, 512 A.2d 893 (1986). "The equal protection clause does not require absolute equality or precisely equal advantages. Rather, a state may make classifications when enacting or carrying out legislation, but in order to satisfy the equal protection clause the classifications made must be based on some reasonable ground." Franklin v. Berger, supra, 595. Where a classification impinges upon a fundamental right or impacts upon an "inherently suspect" group, it will be subjected to strict scrutiny and will be set aside unless it is justified by a compelling state interest. Id. On the other hand, where a classification neither impinges upon a fundamental right nor affects a suspect group it will withstand constitutional attacks if the distinction is founded on a rational basis. Id. "To implicate the equal protection clauses under the state and federal constitutions, therefore, it is necessary that the statute in question, either on its fact or in practice, treat persons standing in the same relation to it differently." Id. 596. The plaintiffs argue that their right to the equal protection of the law is being abridged because C.G.S. 10-76a(e) creates two classes of "children requiring special education", namely children with disabilities, C.G.S. 10-76a(e)(1), and "gifted" children, C.G.S. 10-76a(e)(2), while C.G.S. 10-76d(b) mandates special education only for the latter class of students.
It has been submitted that the classification complained of does not impinge upon a fundamental right. That "gifted" or "exceptional" children are not the sort of "discrete and insular" minority for whom strict judicial scrutiny is required. See Ryskiewicz v. New Britain, 193 Conn. 589, 596-99, 479 A.2d 793
(1984); Graham v. Richardson, 403 U.S. 365, 372, 91 S.Ct. 1848,29 L.Ed.2d 534 (1971). Therefore, since the statute is "neither disciplinary nor an infringement of equal educational opportunity, does not infringe any fundamental rights under our constitution;" Campbell v. Board of Education, supra, 105; and does not create a suspect class, the classification need only be rationally related to some legitimate government purpose. Id.
C.G.S. 10-76d(b), insofar as it mandates special education for children with disabilities but not for children with CT Page 7783 exceptional ability, is not violative of the equal protection clauses because it does not "treat persons standing in the same relation to it differently." Franklin v. Beger, supra, 596. The plaintiffs argue that C.G.S. 10-76a(e) creates a single class of persons, consisting of the disabled and the gifted, and that they are therefore entitled to the same educational benefits as children with disabilities. For equal protection purposes, the children with disabilities and gifted children are not "similarly situated," and the two classes are not made a single class by the fact of their inclusion within a single section of the statute. As the defendants point out in their memorandum in support of the motion for summary judgment, the handicapped require special education because they may have special problems which deny then access to a normal education. (Memorandum in Support of Defendants' Motion for Summary Judgment, 18). The plaintiffs, on the other hand, "gifted" students, do not share these obstacles and are not being denied a "normal" education; instead, the plaintiffs are extraordinarily able, not extraordinarily unabled and thus dissimilarly situated from the class of children defined in C.G.S. 10-76a(e)(1). Therefore, the plaintiffs' argument that they are similarly situated to the children with physical handicaps and other learning disabilities is unavailing, and that in the absence of a showing that the plaintiffs have been treated differently from those similarly situated, the plaintiffs cannot set forth a violation of their constitutional right to equal protection.
Second, in order to succeed under the rational basis test the plaintiffs bear the heavy burden of proving that the challenged law bears no rational relationship to any legitimate state purpose. Campbell v. Board of Education, supra, 105. "[T]he focus of the rational relationship test is not whether the state has superior means available to accomplish its objectives but whether the means it has chosen is a reasonable one." Tyler v. Vickery, 517 F.2d 1089, 1102 (5th Cir. 1975), cert. denied42 U.S. 940 (1976). "Under the rational basis test, `[t]he court's function . . . is to decide whether the purpose of the legislation is a legitimate one, and whether the particular enactment is designed to accomplish that purpose in a fair and reasonable way.' Pierce v. Albanese, 144, Conn. 241, 249,129 A.2d 606, appeal dismissed, 355 U.S. 15, 78 S.Ct. 36,2 L.Ed.2d 21 (1957); see New Orleans v. Dukes, 427 U.S. 297, 303,96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); McGowan v. Maryland, 366 U.S. 520, 425, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); Caldor's Inc. v. Bedding Barn, Inc. 177 Conn. 304, 315, 417 A.2d 343 (1979); Ryskiewicz v. New Britain, supra, 596-99.
The defendants argue that the legislature's distinction between gifted and handicapped children is a legitimate one because handicapped children, unlike gifted children, may require CT Page 7784 special educational services to obtain even rudimentary skills which may enable the handicapped student to become self-sufficient. The defendants argue that gifted students are capable of acquiring most basic skills without special education, and that the special education the gifted students seek is required primarily to maximize their extraordinary potential. This distinction between handicapped and gifted children is "rational" under the rational basis test, and that the challenged statute therefore does not violate the equal protection clause of the state constitution.
Because C.G.S. 10-76a(e) does not treat dissimilarly classes of persons similarly situated, and because the statute passes muster under the rational basis test, the motion for summary judgment is granted as to counts two and three.
Based on the foregoing, the defendants' motions for summary judgment is granted as to all three counts of the plaintiffs revised complaint.
Zoarski, Judge