SLOCUM v HOLTON BOARD OF EDUCATION

Docket No. 96177. Submitted December 9, 1987, at Grand Rapids. Decided February 29, 1988.

Lori Ann Slocum, a student at Holton High School, missed five days of school during one grading period. Pursuant to a policy of the Holton Board of Education, her grades for that period were lowered one full letter grade when she failed to make up the missed class time at after-hours study sessions. Richard Slocum, individually and as next friend of Lori Ann Slocum, brought an action in the Muskegon Circuit Court against the Holton Board of Education, alleging that defendant's policy constituted an ultra vires act and violated Lori Ann Slocum's procedural and substantive due process rights. The trial court, R. Max Daniels, J., granted summary disposition in favor of defendant, ruling that plaintiff had failed to state a claim upon which relief could be granted. Plaintiff appealed.

The Court of Appeals *held:*

1. The School Code impliedly authorizes a school district to consider a student's attendance and excused absences in determining a student's course grade.

2. The policy at issue impinged on no constitutionally protected vested property or liberty interest of Lori Ann Slocum. Assuming arguendo that a protected property or liberty interest was involved, the policy violated neither her substantive nor procedural due process rights. The policy was rationally related to a legitimate governmental purpose and there existed adequate notice of the policy and an opportunity to avoid its adverse effects by attending the after-hours study sessions.

Affirmed.

REFERENCES

Am Jur 2d, Constitutional Law §§ 804 *et seq.*

Am Jur 2d, Schools §§ 22 *et seq.,* 215 *et seq.*

Supreme Court's views as to concept of "liberty" under due process clauses of Fifth and Fourteenth Amendments. 47 L Ed 2d 975.

Expulsion, dismissal, suspension, or other discipline of student of public school, college, university as violating due process clause of Federal Constitution's Fourteenth Amendment—Supreme Court cases. 88 L Ed 2d 1015.

1. SCHOOLS — SCHOOL DISTRICTS AND OFFICERS — POWERS — STATUTES.

Local school districts and officers possess only those powers which statutes expressly, or by reasonably necessary implication, grant to them.

2. SCHOOLS — GRADES — ATTENDANCE — SCHOOL CODE.

The School Code impliedly authorizes a school district to consider a student's attendance and excused absences in determining the student's course grade (MCL 380.1 *et seq.*; MSA 15.4001 *et seq.*).

3. CONSTITUTIONAL LAW — DUE PROCESS.

The due process clauses of both the state and federal constitutions guarantee that no person shall be deprived of life, liberty, or property without due process of law; in order for due process protections, either substantive or procedural, to come into play, there must be a recognized life or liberty interest or property right at stake (US Const, Am XIV, § 1; Const 1963, art 1, § 17).

4. CONSTITUTIONAL LAW — DUE PROCESS — PROPERTY INTERESTS.

A property interest is deserving of constitutional protection under the due process clause where its claimant has a legitimate claim of entitlement that is more than an abstract need, desire, or unilateral expectation (US Const, Am XIV, § 1; Const 1963, art 1, § 17).

5. CONSTITUTIONAL LAW — DUE PROCESS — LIBERTY.

A person is not deprived of liberty in violation of due process simply because state action imposes burdens, abridges freedom of action, regulates occupations, or subjects individuals to restraints in matters which affect public interests or the rights of others (US Const, Am XIV, § 1; Const 1963, art 1, § 17).

*James T. Haadsma,* for plaintiff.

*Landman, Latimer, Clink & Robb* (by *Charles L. Hitesman*), for defendant.

Before: MAHER, P.J., and GRIBBS and L. F. SIMMONS,* JJ.

PER CURIAM. Plaintiff appeals as of right from the Muskegon Circuit Court order granting sum-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

mary disposition to defendant board of education and dismissing his challenge to the board's attendance policy which permits letter grade reductions of students who, having a certain number of excused absences, fail to attend mandatory after-hours study sessions. We affirm.

Lori Ann Slocum, a tenth-grade student at Holton High School in Muskegon County, Michigan, was absent from school for five days during the first of six marking periods during the 1985-86 school year. Lori's absence was due to a concussion she received during a fall, and thus was excused.

Pursuant to the attendance policy of defendant board of education, any student with more than three days of excused absences during a marking period was required to make up the missed time at after-hours study sessions. Students failing to attend the sessions were subject to having their letter grades reduced.[1] Apparently Lori attended only one of the five sessions she was required to attend. As a result, her first marking period grades were lowered by one full letter grade.

---

[1] The relevant portion of defendant's attendance policy states as follows:

1. Students will be allowed three (3) excused days per grading period. Work must be made up to keep grades from being affected. Students may not make up work as the result of an unexcused absence.

2. Each excused absence after three will have to be made up in the after school make-up room or the absences will result in a grade reduction or failure.

a. Fourth absence without make-up time will drop one letter grade.

b. Fifth drop two letter grades.

c. Sixth will result in failure for the six weeks.

As noted above, unexused absences were treated differently. In addition to having letter grade reductions upon reaching a certain number of absences, students with unexcused absences were not permitted to make up the work which was missed. Thus, they could suffer an even further reduction in their grades if an examination, quiz, or assignment was held during an unexcused absence.

On May 2, 1986, Richard Slocum, individually and as next friend of Lori Ann Slocum, commenced this action in the Muskegon Circuit Court, alleging that defendant's attendance policy constituted an ultra vires act and violated Lori's right to procedural and substantive due process. On August 11, 1986, defendant responded with a motion for summary disposition pursuant to MCR 2.116(C)(8), failure to state a claim on which relief can be granted.

Following oral arguments on the motion, the court took the matter under advisement. On September 29, 1986, it issued a written opinion holding that the attendance policy was not ultra vires as the board had authority to adopt the policy under the School Code, MCL 380.1 *et seq.*; MSA 15.4001 *et seq.* The court also held that the attendance policy did not violate Lori's due process rights and was not arbitrary, capricious, or an abuse of discretion. Accordingly, the defendant's motion for summary disposition was granted. An order to that effect was entered on October 6, 1986.

On appeal, plaintiff first argues, as he did below, that the board of education was without authority to adopt the attendance policy and, thus, its actions were ultra vires. We disagree.

Local school districts and officers possess only those powers which statutes expressly, or by reasonably necessary implication, grant to them. *Jurva v Attorney General,* 419 Mich 209, 214; 351 NW2d 813 (1984); *Senghas v L'Anse Creuse Public Schools,* 368 Mich 557, 560; 118 NW2d 975 (1962). In the instant case, various provisions of the School Code are relevant and require discussion. Section 1282 of the code authorizes school boards to establish and maintain the grades, schools, and

departments or courses of study they deem necessary or desirable for the maintenance and improvement of public education. MCL 380.1282; MSA 15.41282. School boards are also empowered to make

> reasonable regulations relative to anything necessary for the proper establishment, maintenance, management, and carrying on of the public schools of the district, including regulations relative to the conduct of pupils concerning their safety while in attendance at school or enroute to and from school. [MCL 380.1300; MSA 15.41300.]

Finally, school boards are required to assist in the enforcement of the compulsory attendance law, MCL 380.1561; MSA 15.41561, which provides that every child between the ages of six and sixteen shall attend a public or approved nonpublic school continuously and consecutively during the entire school year. See MCL 380.1284; MSA 15.41284. If a school board's decision is expressly or impliedly authorized by any of the above statutory provisions, this Court cannot substitute its judgment for that of the board. Inquiry is limited to whether the board's decision—which is presumed reasonable and proper unless shown to be an abuse of discretion—was arbitrary and unreasonable. *Hiers v Detroit Superintendent of Schools,* 376 Mich 225, 234-235; 136 NW2d 10 (1965); *LaPorte v Escanaba Area Public Schools,* 51 Mich App 305, 308; 214 NW2d 840 (1974). We believe that defendant's attendance policy is impliedly authorized by statute and is not arbitrary and unreasonable.

The precise question raised by plaintiff (i.e., whether a school district may consider attendance and excused absences in determining a student's course grade) was the subject of a 1978 opinion of the Michigan Attorney General, OAG, 1977-1978,

No 5414, p 738 (December 20, 1978). In holding that school officials could consider attendance in grading a student's course performance, the attorney general explained:

> The compulsory attendance law recognizes an educational value in regular attendance at school. Presence in a classroom aids in instilling concepts of self-discipline and exposes a student to group interactions with teachers and fellow students. Such presence also enables a student to hear and participate in class instruction, discussion and other related learning experiences. These and similar considerations are proper educational values which will not necessarily be fully reflected in test results.
>
> School authorities may determine that attendance, class participation and similar factors are proper educational values bearing on a student's academic achievement. [*Id.,* pp 739-740.]

We find that explanation to be sound. An education entails more than just correctly answering questions asked on an examination. Obviously, the purpose of the compulsory attendance law is to ensure that students experience those other educational intangibles described in the attorney general's opinion. A regulation which attempts to obtain that goal certainly comports with the spirit, if not the letter, of the enabling legislation. Defendant's attendance policy properly serves to facilitate the education of our state's children—a responsibility entrusted to local school boards by the School Code.

Contrary to what plaintiff argues, the compulsory attendance law does not prescribe certain specific responses to student nonattendance to the exclusion of all other unenumerated responses. Part 24 of the School Code, MCL 380.1561 *et seq.*; MSA 15.41561 *et seq.*, generally requires, in cases

of excessive truancy, investigation by an attendance officer and possible action (fine or imprisonment) against the truant's parents. Unfortunately, and unlike defendant's attendance policy, those responses are ex post facto. Defendant's policy, on the other hand, seeks to prevent the damage from occurring in the first instance. When a student fails to attend classes, that educational experience is lost. No investigation by an attendance officer, or action against the parent, can recreate an experience once passed. While defendant's policy cannot replicate the actual class time missed, it instills an incentive to attend all classes and, failing that, it provides the student with a comparable (albeit after-hours) experience. We do not believe that defendant's attendance policy—which complements, not contravenes, certain statutorily prescribed responses to truancy—is precluded by the compulsory attendance law.

Plaintiff next argues that, even assuming the School Code authorizes a school board to address truancy by means not expressly prescribed by statute, defendant's attendance policy is still ultra vires because its stated purpose is to encourage "responsibility for attendance and [promote] the proper attitude for the world of employment," not for an educational purpose. That argument merely begs the question.

"Education" is not an experience which is to be measured only from within the confines of a classroom. Plaintiff offers no authority (and we cannot envision any) standing for the proposition that preparing students for the world of employment is not a goal of education. If one of the goals of our educational system is to make students functional members of society, and employment is an integral part of that society (both assumptions being beyond serious dispute), then defendant's attendance

policy cannot be faulted for attempting to achieve that goal.

As a final argument on this issue, plaintiff asserts that the attendance policy, by reducing grades and possibly leading to loss of course credit, will actually act as a disincentive to continued attendance. That argument is misplaced. Unlike the cases cited by plaintiff, the students here did not unconditionally lose course credit upon the happening of an event (e.g., failure to pay a parking fine or missing a certain number of classes). In this case, a student who misses more than three class periods is given the opportunity to make up that time by attending after-hours study sessions. His or her course credits are not automatically and irreversibly forfeited. Thus, students are given the incentive to make up the missed time and to attend all future classes. Plaintiff's argument to the contrary is as misplaced as his argument that the compulsory attendance law provides a disincentive to attending classes because it requires 180 days of attendance per school year. We hold that defendant's attendance policy is not ultra vires.

Next, plaintiff argues that Lori's rights to substantive and procedural due process were violated by defendant's attendance policy.

The due process clauses of both the state and federal constitutions guarantee that no person shall be deprived of life, liberty, or property without due process of law. US Const, Am XIV, § 1; Const 1963, art 1, § 17. But, in order for due process protections, either substantive or procedural, to come into play, there must be a recognized life or liberty interest or vested property right at stake. See *Martinez v California,* 444 US 277, 281-282; 100 S Ct 553; 62 L Ed 2d 481 (1980); *Bd of Regents of State Colleges v Roth,* 408 US 564, 576-578; 92 S Ct 2701; 33 L Ed 2d 548 (1972);

*Grubaugh v City of St Johns,* 384 Mich 165, 170-171; 180 NW2d 778 (1970); *Henley v Dep't of State Highways & Transportation,* 128 Mich App 214, 222; 340 NW2d 72 (1983). "An indispensable element of any due process claim is constitutional or statutory entitlement." *Myers v United States Parole Comm,* 813 F2d 957, 960 (CA 9, 1987). Here, there was neither.

To have a property interest deserving of constitutional protection, a person must have more than an abstract need, desire, or unilateral expectation of it. There must, instead, be a legitimate claim of entitlement to it. *Roth, supra,* p 577; *Edmond v Dep't of Corrections (On Remand),* 143 Mich App 527, 533; 373 NW2d 168 (1985). With that principle in mind, we hold that Lori did not have a vested property right in any grade higher than those actually awarded to her.

At this point, it is necessary to point out that the interest at stake here is not the right to certain grades which Lori had "earned" but which were later reduced by some action of defendant. Rather, the interest here is the right not to have attendance considered in determining one's grades. Phrased in those terms, it is easier to understand why there was no vested property right at stake here.

Lori had no more "earned" grades higher than what she received than someone else who did not complete the necessary requirements for a higher grade (e.g., not completing a class assignment, failing an examination or quiz, not participating in class discussions). As previously stated, there is more to an education than correctly answering questions asked on an examination. There are many factors which may properly be considered in determining a student's course grade—attendance is one such factor. To hold that Lori had a vested

property interest in higher grades would be as absurd as holding that an employee has the right to a paycheck for which she has not worked or that a consumer has the right to a product for which he has not paid. The mere potential for, or expectancy of, Lori in receiving higher grades cannot create constitutional or statutory entitlement where none theretofore existed.

As to a claimed liberty interest, that term entails more than the right to be free from arbitrary personal restraint or servitude. In its broadest sense, "liberty" means

> [t]he right of the citizen to be free in the enjoyment of all his faculties; to be free to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; and to pursue any livelihood or avocation, . . . In short, liberty under law extends to the full range of conduct which the individual is free to pursue, and which cannot be restricted except for a proper governmental objective. [16A Am Jur 2d, Constitutional Law, § 554, pp 463-465.]

A person is not deprived of liberty, however, simply because state action "imposes burdens, abridges freedom of action, regulates occupations, or subjects individuals to restraints in matters which affect public interests or the rights of others." *Id.,* § 555, p 467.

Plaintiff claims a protected liberty interest in Lori's good name, reputation, honor or integrity which is derived from "the recognition by state law of her right to accurately reflective academic evaluations." Again, that argument merely begs the question at hand since it presupposes that class attendance is not a proper measure of academic achievement. Assuming, as one must, that an examination cannot cover every bit of informa-

tion discussed in class, it would be reasonable to hold that where two students have identical examination scores the student who had greater attendance also had greater knowledge (i.e., education) of the subject. Moreover, reputation alone, apart from some more tangible interest such as employment, is not enough to invoke the due process clause of the United States Constitution. *Paul v Davis,* 424 US 693, 701; 96 S Ct 1155; 47 L Ed 2d 405 (1976). The same should be true of our state constitution, especially since the judiciary must be resistant to expanding the substantive reach of due process. *Bowers v Hardwick,* 478 US 186, 194; 106 S Ct 2841; 92 L Ed 2d 140 (1986).

Because Lori's interest in defendant's attendance policy did not rise to the level of a constitutionally protected liberty or property interest, our inquiry is at an end. We would note in passing that, even assuming arguendo that Lori had a protected interest, the attendance policy did not violate her right to substantive and procedural due process. The policy was rationally related to a legitimate government purpose. *Campbell v New Milford Bd of Ed,* 193 Conn 93; 475 A2d 289 (1984). See also *Snyder v Charlotte Public School Dist,* 421 Mich 517, 525, 529; 365 NW2d 151 (1984), reh den 422 Mich 1201 (1985); *Pioneer State Mutual Ins Co v Allstate Ins Co,* 417 Mich 590, 600; 339 NW2d 470 (1983), reh den 418 Mich 1202 (1984). Also, Lori had notice of the policy and an opportunity to avoid its adverse effects by attending after-hours study sessions. This satisfied the requirements of procedural due process.

Affirmed.