STATE ex rel. CLINT YARBER,
a Minor, etc., Relator,

v.

Honorable James F. McHENRY, Judge of
the 19th Circuit Court, Respondent.

No. 77744.

Supreme Court of Missouri,
En Banc.

Nov. 21, 1995.

As Modified on Denial of Rehearing
Dec. 19, 1995.

Kent L. Brown, Jefferson City, for relator.

Virginia L. Fry, Don G. Busch, Springfield, for respondent.

1. On transfer, the Missouri School Boards Association, with leave of court, filed a brief as ami-

Steven L. Wright, Melissa K. Randol, Columbia, for amicus curiae Missouri School Boards Association.

## ORIGINAL PROCEEDING IN PROHIBITION

LIMBAUGH, Judge.

This is a proceeding in prohibition. Relator, Clint Yarber, asks this Court to determine the proper venue for judicial review of a decision by the Mountain Grove School District denying him a semester of high school credit hours because of excessive absences. Yarber contends that venue is proper in Cole County because the underlying case is a "contested case" as that term is used in the Missouri Administrative Procedure Act (MAPA), set out in chapter 536, RSMo. Respondent, Hon. James F. McHenry of the Circuit Court of Cole County, determined that the case is not a "contested case" and ordered that it be transferred to the Circuit Court of Wright County where Yarber resides and where the school district is located. The Missouri Court of Appeals, Western District, issued a preliminary writ of prohibition at Yarber's request after which this Court granted transfer. *Rule 83.03.*[1] We now make the writ absolute.

### I.

Clint Yarber attends Mountain Grove High School, which is operated by the Mountain Grove R–III School District. The school district has an attendance policy for the high school that states in pertinent part as follows:

I. Any student who misses more than six days in any given class in a semester will have the opportunity to make up class time or lose credit for that semester.

. . . .

II. For the seventh and subsequent absences, students will attend "Saturday School" to make up time missed and receive credit for the semester.

. . . .

cus curiae.

V. If a student misses more days than available make-up days would accomodate [sic] (due to major illness, accident, or death in his/her immediate family), that student could file an appeal along with his or her parent/guardian(s) to be released from those days missed.

Yarber was accused of violating the attendance policy during the fall 1993 semester. The school notified him that he would be required to make up three days over Christmas vacation and one day during the month of January. Yarber attended two of the scheduled make-up days, but when his mother allegedly saw students in the make-up classes eating pizza and watching a movie, she took him out of the classes and did not send him back for the remaining days.

On January 12, 1994, Yarber, who had accrued credit for his class work, was notified by the school district that he had lost that credit for the semester because of the attendance policy violation.[2] Yarber then appealed to the school board, which heard Yarber's objection but did not convene a formal hearing as contemplated by the "contested case" provisions of § 536.070, RSMo 1986. Thereafter, on January 28, 1994, the board denied the appeal.

Yarber, by and through his mother and next friend, Cheryl Yarber, then filed a three-count petition in the Circuit Court of Cole County, naming the school district, members of the board, and various administrators as defendants. In Count I, Yarber seeks judicial review under § 536.150, RSMo 1986, governing review of noncontested cases. Count II is brought, in the alternative, under §§ 536.100 to 536.140, RSMo 1986, governing review of contested cases. Count III is a claim for damages and injunctive relief pursuant to 42 U.S.C. §§ 1983 and 1988 for violation of Yarber's constitutional right to due process.

In the petition, Yarber alleged that venue was proper in Cole County under § 536.110.3, RSMo 1986, which states: "The venue of [contested] cases shall, at the option of the plaintiff, be in the circuit court of Cole County...." Defendants filed a motion to transfer the case to Wright County on the ground that the case was not a contested case. Judge McHenry sustained the motion to transfer, but several days thereafter he stayed the transfer to allow Yarber to seek a writ of prohibition. In the meantime, however, the case files were transferred to Wright County. When advised of the stay order, Wright County officials sent the files back to Cole County.

The principal issue before us is whether Yarber's case is a contested case. If so, then Yarber is correct that venue is proper in Cole County. § 536.110.3, RSMo 1986. Otherwise, the case can be brought only in Wright County. § 508.010(1), RSMo 1986.

## II.

■ A contested case is defined in § 536.010(2), RSMo 1986, as "a proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after a hearing." Local school boards such as that in Mountain Grove qualify as agencies under this definition because they are created by Missouri statutes from which they derive their rulemaking and adjudicatory authority. § 536.010(1), RSMo 1986. *See also Hagely v. Board of Education of Webster Groves School District,* 841 S.W.2d 663 (Mo. banc 1992) (MAPA applied to Board of Education of Webster Groves).

### A.

■ We would note, preliminarily, that the failure in this case of the Mountain Grove

---

**2.** In his petition, Yarber alleges that "he had accrued credit for class work sufficient to entitle him to receive academic credit," but that he had "lost [that] credit solely by operation of the attendance policy." On motion for rehearing, the school district, for the first time, disputes this allegation. However, in its brief to this Court, the school district stated that "Relator had lost credit on all classes due to his violation of the attendance policy ...." Moreover, the school

district admitted in its answer to Yarber's petition for writ of prohibition the allegation that "all of relator's class credits were taken away." Indeed, even at oral argument, counsel for the school district stated that there was no indication that Yarber had failed any exams. Therefore, for purposes of the petition for writ of prohibition and the underlying motion for change of venue, the allegation was uncontroverted.

School District to conduct a formal hearing under contested case procedures presents the issue of whether chapter 536 applies at all. In *Hagely,* this Court, in dicta, stated:

> A hearing that is not held pursuant to the procedural format necessary under MAPA does not qualify as a contested case, even though the hearing is required by law.

*Id.* at 668–69. However, as pointed out in *Weber v. Firemen's Retirement System,* 872 S.W.2d 477, 480 (Mo. banc 1994), this language was used to indicate that certain procedural advantages provided to the agency by the MAPA may be lost by the agency if it failed to follow contested case procedures. *Id.* at n. 3. In the context of the case at hand, § 536.010(2) mandates that if a hearing is required by substantive law, it must be conducted according to contested case procedures. The relevant inquiry is not whether the agency in fact held a contested case hearing, but whether it should have done so.

### B.

■ The "law" referred to in the contested case definition encompasses any statute or ordinance, or any provision of the state or federal constitutions that mandates a hearing. *Weber,* 872 S.W.2d at 479; *Byrd v. Board of Curators of Lincoln University of Missouri,* 863 S.W.2d 873, 875 (Mo. banc 1993). The right to a hearing, in other words, is determined by substantive law outside the MAPA. In this case, neither Yarber nor the school district has directed us to any statute, rule, or ordinance granting Yarber a hearing, nor have we found one independently. The only other possible source for a hearing, therefore, is the constitutional right to due process.

■ In order to be entitled to a hearing under due process of law, a plaintiff must have either a life, liberty, or property interest protected by the Constitution. *Board of Curators of the University of Missouri v. Horowitz,* 435 U.S. 78, 82, 98 S.Ct. 948, 951, 55 L.Ed.2d 124 (1978). Yarber contends that he has a protected property interest in a high school education. Although no fundamental right to education exists under the United States Constitution, *San Antonio School District v. Rodriguez,* 411 U.S. 1, 34–35, 93 S.Ct. 1278, 1297–98, 36 L.Ed.2d 16 (1973), protected property interests generally derive from state law, *Perry v. Sindermann,* 408 U.S. 593, 599–603, 92 S.Ct. 2694, 2698–2700, 33 L.Ed.2d 570 (1972). In *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), the United States Supreme Court determined that a state-created property interest arose out of Ohio statutes that provided for free public education and compulsory attendance. *Goss,* 419 U.S. at 573–74, 95 S.Ct. at 735–36. Similarly, in Missouri, § 160.051, RSMo 1986, mandates the establishment of schools for the "gratuitous instruction of children," and § 167.031, RSMo 1986, provides for compulsory attendance. These Missouri statutes establish a property interest in an education no less than the property interests established by the Ohio statutes in *Goss.*

Any governmental taking of a property right implicates the right to procedural due process and thus requires notice and an opportunity to be heard. *Weber,* 872 S.W.2d at 479. In *Goss,* the Supreme Court held that a student suspended even for a *de minimis* period—10 days or less—is entitled to notice of the charges against him or her and a hearing consisting of "at least an informal give-and-take between student and disciplinarian." *Goss,* 419 U.S. at 581–84, 95 S.Ct. at 739–41. The Court also suggested that where the discipline is more than *de minimis,* a hearing affording more than the informal proceeding in *Goss* may be required. *Goss,* 419 U.S. at 584, 95 S.Ct. at 740–41.

■ In Yarber's case, the penalty imposed—loss of a semester's worth of credit hours—is in no way *de minimus;* it is instead a considerable infringement on Yarber's property interest. For that reason, we hold that procedural due process requires a hearing with more formal and extensive procedures than that provided in *Goss.* This, in turn, triggers the contested case provisions of MAPA.

The school district, citing *State ex rel. Leggett v. Jensen,* 318 S.W.2d 353 (Mo. banc 1958), contends that due process does not require a contested case hearing for all deprivations of life, liberty, or property rights.

Implicit in *Leggett,* according to the school district, is the notion that a **de minimus** penalty would not require a contested case hearing. We note that *Leggett* predates *Goss* and other modern due process cases. In any event, having determined that the penalty imposed upon Yarber is a considerable infringement on his property interest, we need not address the viability of *Leggett* or the question of whether a contested case hearing is required for a *de minimis* penalty.

### C.

■ The Supreme Court, in *Horowitz,* qualified its decision in *Goss* by determining that procedural due process does not require a hearing when the deprivation is for academic reasons rather than disciplinary reasons. *Horowitz,* 435 U.S. at 89–91 and n. 3, 98 S.Ct. at 954–56 and n. 3. Consequently, only when the deprivation is for disciplinary reasons does the degree of the deprivation become a factor in evaluating the level of process due. In explaining the academic/disciplinary distinction, the Court stated:

> The educational process is not by nature adversary; instead it centers around a continuing relationship between faculty and students, "one in which the teacher must occupy many roles—educator, adviser, friend, and, at times, parent-substitute."
> ... In *Goss,* this Court concluded that the value of some form of hearing in a disciplinary context outweighs any resulting harm to the academic environment. Influencing this conclusion was clearly the belief that disciplinary proceedings, in which the teacher must decide whether to punish a student for disruptive or insubordinate behavior, may automatically bring an adversary flavor to the normal student-teacher relationship. The same conclusion does not follow in the academic context. We decline to further enlarge the judicial presence in the academic community and thereby risk deterioration of many beneficial aspects of the faculty-student relationship.

*Id.* at 90, 98 S.Ct. at 955.

Accordingly, this Court must determine what constitutes an academic as opposed to a disciplinary sanction. In *Horowitz,* the plaintiff was dismissed from medical school because of her inadequate performance, erratic attendance and lack of personal hygiene. The plaintiff argued that the latter two criteria constituted disciplinary, as opposed to academic, reasons for her dismissal. However, the Court determined otherwise, finding that factors other than grades can also be a part of an individual's academic performance. Thus, a dismissal or other sanction can be based on factors other than grades and yet be considered academic in nature. *Id.* at n. 6.

■ As we understand *Horowitz,* if the sanction relates to the academic evaluation of the student, it is academic rather than disciplinary. Conversely, if the sanction does not bear upon the academic evaluation of the student, it is disciplinary rather than academic. The distinction, we observe, will often be difficult to make as nearly every aspect of a student's conduct has some potential bearing on academic performance.

The question then is squarely posed: Is the attendance policy of Mountain Grove High School academic or disciplinary in nature? If disciplinary in nature, then a hearing is required, and the underlying suit is a contested case. Therefore venue would be proper in Cole County. On the other hand, if the nature of the attendance policy is academic, then a hearing is not required, and the underlying suit is not a contested case. Therefore venue would be proper only in Wright County.

■ We hold that the Mountain Grove attendance policy, as written and as applied to Yarber, is disciplinary in nature. The policy states that if the student fails to make up the absences, he or she will "lose credit for that semester." As conceded in the school district's pleading here, this provision takes away previously earned credit as punishment for unsatisfactory attendance. While an attendance policy might conceivably be structured to relate to academic performance, the policy in this case does not do so.

Our research has produced only two cases addressing the right to procedural due process in relation to school attendance policy

violations. In *Campbell v. Board of Education of New Milford*, 193 Conn. 93, 475 A.2d 289 (1984), the Supreme Court of Connecticut found an attendance policy to be academic in nature, rather than disciplinary. *Campbell*, 475 A.2d at 291–95. However, the attendance policy in *Campbell* differed significantly in three respects from the Mountain Grove attendance policy: (1) the school *withheld* credit from the student for missing twenty-four class periods rather than taking away credit already earned; (2) the attendance policy explicitly stated that its purpose was academic; and (3) the student's grades were reduced for each unapproved absence. *Id.* at 290–291. In *Slocum v. Holton Board of Education*, 171 Mich.App. 92, 429 N.W.2d 607 (1988), the Michigan Court of Appeals never discussed the academic/disciplinary due process distinction, but held, instead, that the student did not possess a property right to unearned grades. *Slocum*, 429 N.W.2d at 611. Therefore, we find these cases distinguishable and unpersuasive.

We are aware that in *Knapp v. Junior College District of St. Louis County*, 879 S.W.2d 588 (Mo.App.1994), the Court of Appeals, Eastern District, held a suspended college student who unquestionably possessed a property right to a semester's education was not entitled to a contested case hearing. The suspension was invoked because of an altercation between plaintiff and a college staff member. One basis for the court's holding was that no formal hearing was required by due process, despite the fact that the suspension was disciplinary in nature. To the extent that *Knapp* holds that no formal hearing is required for a semester-long suspension, it should no longer be followed.[3]

### III.

Finally, the school district argues that the petition for writ of prohibition should be dismissed for the reason that Judge McHenry had no jurisdiction over the case at the time the petition was filed. According to the school district, once the judge ordered the

change of venue and the case was transferred to Wright County, his purported stay order was of no effect, even though the case files were indeed returned to Cole County.

■ Having decided that Judge McHenry had no authority to transfer the case to Wright County in the first place, the order to transfer, itself, was void. Had the case not been returned from Wright County to Cole County, it would have been necessary for relator to join the appropriate Wright County judge as a party-respondent. *See State ex rel. Malone v. Mummert*, 889 S.W.2d 822, 826–27 (Mo. banc 1994). That the case is now properly pending in Cole County obviates the need for such joinder.

We make absolute the preliminary writ in prohibition. The trial court shall vacate its order transferring this case to Wright County and shall exercise jurisdiction over the case.

BENTON and PRICE, JJ., MONTGOMERY, Special Judge, and BLACKMAR, Senior Judge, concur.

COVINGTON, J., concurs in separate opinion filed.

HOLSTEIN, C.J., withdraws dissenting opinion filed November 21, 1995 and concurs in opinion of LIMBAUGH, J.

ROBERTSON, J., not sitting.

WHITE, J., not participating because not a member of the Court when case was submitted.

COVINGTON, Judge, concurring.

I concur completely in the majority opinion. I write separately to note that secondary and elementary schools may want to consider addressing the possibility of exclusion from the full panoply of process dictated by Chapter 536 when a case is deemed to be contested because a hearing is required by law, as did certain institutions of higher education through enactment of section 536.018,

---

**3.** The applicability of the MAPA to colleges and universities may now be a moot point because the general assembly has enacted § 536.018, RSMo 1994, which states that the term "agency"

does not include an institution of higher education that has otherwise established constitutionally adequate safeguards.

RSMo 1994. The majority opinion appropriately does not reach the question of how much process actually is due in a case such as the one *sub judice.* Applicability of the Missouri Administrative Procedure (Act) in this case, however, appears necessarily to require extensive process. *See, e.g.,* §§ 536.063, 536.067, 536.068, 536.070, 536.073, 536.077, 536.080, 536.083, RSMo 1994. In addition, the Act provides for the recovery of attorney's fees by a prevailing party. § 536.087.1, RSMo 1994.

The provisions of the Act itself subsume the question of how much process, as a constitutional requirement, would be due in this case. While *Goss v. Lopez,* 419 U.S. 565, 581–84, 95 S.Ct. 729, 739–41, 42 L.Ed.2d 725 (1975), clearly suggests that a hearing affording more than the informal proceeding in *Goss* may be required, it by no means prescribes in every case the process mandated under the Act. If secondary and elementary schools find the necessary result in this case unduly burdensome, their concern could be addressed by the legislature.