STATE of Missouri ex rel., The SCHOOL DISTRICT OF KANSAS CITY, Missouri, It's Board of Directors, David A. Smith, Helen Ragsdale, Ingride Y. Burnett, Dr. William B. Eddy, Duane Kelly, Joel Pelofsky, Harriett Ann Plowman, Marilyn Y. Simmons, Claude L. Harris and Dr. Bernard Taylor, Jr., Relators,

v.

The Honorable J.D. WILLIAMSON, Jr., Respondent.

No. WD 64294.

Missouri Court of Appeals,
Western District.

July 27, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 31, 2004.

Application for Transfer Sustained.

Case Retransferred Sept. 8, 2004.

Court of Appeals Opinion Readopted
Sept. 13, 2004.

Allan Hallquist, Kansas City, for appellant.

James Wyrsch, Keith Drill, Justin Johnson, Kansas City, for respondent.

## ORIGINAL PROCEEDING IN PROHIBITION

RONALD R. HOLLIGER, Presiding Judge.

This is a petition for a writ of prohibition requiring interpretation of the Missouri Charter Schools Act, Sections 160.400 to 160.420, RSMo. A central question raised by the parties is whether the Kansas City, Missouri, School District (hereinafter "District") acted to revoke the charter of Westport Charter School (hereinafter "Westport") prior to the expiration of its charter or whether the charter was expiring and the District merely declined to renew it. Determining this issue turns upon the term of the charter, but, here, the charter fails to expressly set forth its term.

We conclude that Westport's charter was due to expire at the conclusion of five years as a matter of law, and that the District elected not to renew that charter. While the Charter Schools Act does not expressly set forth procedures to be followed with regard to charter renewal, we conclude that the procedures for initial charter application apply in this context and that such procedures were followed by the parties. We conclude, therefore, that the respondent trial judge exceeded his jurisdiction in granting Westport's request for preliminary injunction and issue a writ of prohibition barring respondent from enforcing that injunction.

### The Missouri Charter Schools Act

A brief review of the Missouri Charter Schools Act, Sections 160.400–.420, RSMo, is necessary prior to any discussion of the underlying facts in this matter. The Charter Schools Act, approved by the General Assembly, in 1998, set up a scheme by which private groups could seek a charter to operate a school in certain urban districts. The applicants were required to seek approval of a sponsor, which might, by statute, be the local school district, a community college or university. § 160.400, RSMo. Perceived advantages were that charter schools could operate free of many of the technical requirements imposed on public school districts and take unique or imaginative approaches to curriculum development and implementation. At the same time, the charter school could obtain the per-pupil funding that the local

school district would have received for each student and could seek other funding, including grants. §§ 160.415.2, 160.415.11, RSMo. Charter schools could also utilize non-certified teachers for up to twenty percent of its staff if the teacher had specialized skills and ability but no teaching certificate. § 160.420.2, RSMo.

The Act also set up detailed procedures and requirements for original applications to sponsors. A sponsor was required to approve or disapprove a charter in writing within sixty days of the date the charter was presented to the sponsor. § 160.405.2(1),(2), RSMo. If a sponsor approved a charter, that charter was then to be submitted to the State School Board, who would grant final approval or disapproval within forty-five days. § 160.405.3, RSMo. If the Board approved the charter, then operations could begin. If the Board disapproved the charter, then the Act provided for judicial review of the Board's decision under the provisions of Chapter 536, RSMo, the Missouri Administrative Procedure Act, (MAPA). § 160.405.4, RSMo. The Charter School Act did not state that there was any right to a hearing before judicial review of the State Board's decision under the MAPA. If the Sponsor disapproved the charter, the charter could then be presented to the State Board which could agree to become the sponsor, itself. § 160.405.2(3), RSMo. The Act contained no provisions for judicial review of a sponsor's decision not to become a sponsor.

The Act also specified detailed procedures dealing with revocation of charters. See § 160.405.7, RSMo. A sponsor who proposed to revoke a charter was required to give written notice at least sixty days prior to acting on the proposed revocation, specifying the reasons for its action. § 160.405.7(3), RSMo. A revocation could

only be based on certain grounds, such as a serious breach of the charter, failure to meet academic performance standards, failure to meet fiscal management standards, or violation of law. § 160.405.7(1), RSMo. A revocation would not become effective until the conclusion of the school year,[1] unless continuation of the school's operation presented a "clear and immediate threat to the health and safety of the children." § 160.405.7(5), RSMo. The charter school was given the right to a hearing upon a proposed revocation, and judicial review of a decision to revoke a charter was given under the MAPA. See § 160.405.7(4), RSMo.

In addition to detailing how a charter must be initiated and approved and how that charter could be revoked, the Charter Schools Act specified that Charters would be granted for no less than five years and no more than ten years "and shall be renewable." § 160.405.1(3), RSMo. Unlike with the Act's provisions dealing with revocation, however, no criteria for renewal were specified within the Act, and the Act says nothing about what procedures must be followed regarding renewal of a charter or whether there is any judicial review of a sponsor's decision not to renew a charter.

FACTS AND PROCEDURAL BACKGROUND

In November, 1998, Westport applied for charter school sponsorship with the District. In April 1999, the District agreed to be the sponsor and Westport has operated a middle and high school at District facilities for the five school years since that time. Westport originally entered into a management contract with Edison Schools to provide curriculum and management of the charter schools. That relationship was severed sometime in late 2003, but we do not consider that fact or

1. By law, a "school year" runs from July 1 to June 30. § 160.041.1, RSMo.

the reasons underlying it of significance to our analysis.

On February 11, 2004, the District notified Westport that its charter would expire June 30, 2004, unless renewed. On March 11, 2004, the District requested that any request for renewal be submitted by April 1, 2004. On April 1, Westport submitted a "charter application revision" to the District. The District claimed several deficiencies in the application, and Westport submitted additional documentation to the Board. On April 28, 2004, the District received a financial review report and Charter School Review Committee report alleging financial and performance deficiencies. The parties vehemently disagree as to the accuracy of these reports, but, again, we see those factual disputes as irrelevant. On that same day and without any hearing, the Board denied Westport's application for renewal.

A few days later, Westport filed a five-count petition in circuit court seeking (1) judicial review under Section 536.140, RSMo; (2) reversal of the District's decision for violations of due process; (3) injunctive relief preventing the District from taking over the school's operations or interfering with the relationship between Westport and its teachers and students; (4) reversal of the District's decision due to irregularities and unfairness in the District's procedures; and (5) reversal of the District's decision based upon the District's breach of the covenant of good faith and fair dealing.

After evidentiary hearings, the trial court made certain findings of fact and conclusions of law and issued a preliminary injunction on June 25, granting relief as requested by Westport, "until statutory procedures are followed as set out in this order." The District then sought the present writ of prohibition, seeking to bar re-

spondent from enforcing the preliminary injunction.

Because of the importance of this issue and sensitive time considerations regarding planning for the school year, we dispensed with consideration of a preliminary writ and the usual briefing schedule and heard arguments on July 12, 2004. We now issue a writ of prohibition directing the respondent trial judge to dissolve his preliminary injunction and dismiss Westport's petition.

### DISCUSSION

### *Standards for Writ of Prohibition*

■ A writ of prohibition is proper in any of the following three circumstances: "(1) to prevent the usurpation of judicial power when the trial court lacks jurisdiction; (2) to remedy [an] excess of jurisdiction or an abuse of discretion where the lower court lacks the power to act as intended; or (3) where a party may suffer irreparable harm if relief is not made available in response to the trial court's order." *See State ex rel. Proctor v. Bryson*, 100 S.W.3d 775, 776 (Mo. banc 2003). As will be discussed, below, we conclude that the trial court did not have jurisdiction to entertain Westport's petition seeking judicial review of the Board's decision.

### *The Missouri Administrative Procedure Act*

■ The Missouri Administrative Procedure Act (MAPA), Chapter 536, RSMo, sets forth procedures to be followed in certain administrative practices and also establishes the methods of review for decisions made by administrative agencies. The MAPA is applicable to local school boards (and districts), as they are created by state statute, from which they obtain rulemaking and adjudicatory authority. *See State ex rel. Yarber v. McHenry*, 915 S.W.2d 325, 327 (Mo. banc

1995). Essentially two types of judicial review are provided under the MAPA: (1) contested case review and (2) noncontested case review. *See* §§ 536.140, 536.150, RSMo. Contested case review is provided for those administrative decisions reached after a hearing to which a party is entitled by statute, ordinance, other legal provision, or, in some cases, by virtue of a life, liberty, or property interest protected by due process. *See Yarber*, 915 S.W.2d at 328. Where there is no legal right to a hearing before the administrative body, judicial review of its administrative decision may be available via non-contested judicial review under Section 536.150, RSMo, if the administrative decision determines legal rights, duties, or privileges of any person. There are significant distinctions between the scope of the circuit court's review in these two types of judicial review.

### Was Westport's Charter Revoked by the District, or Merely Not Renewed?

One of the central issues, here, is whether the District's actions constituted a revocation of Westport's charter prior to the expiration of its term or whether the District merely decided not to renew that charter, allowing it to expire at the conclusion of its term. Resolution of this issue requires determination of the length of the term of Westport's charter. This would normally be a simple matter to resolve, as Section 160.405.1(3), RSMo, requires a charter to state its term. However, the charter in question in this matter failed to include that provision, despite the clear statutory requirement. The legal effect of that missing provision, therefore, is now both an issue of dispute between the parties and the fulcrum upon which resolution of this matter turns.

Neither party argues that the charter's failure to state its term renders the charter void or invalid. Instead, each essentially argues that a term can be implied from either the Charter Schools Act, itself, or by relying upon extrinsic evidence.

We must, therefore, determine the legislature's intent regarding the term length of a charter in the absence of a provision in the charter itself. The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible and to construe the words in their plain and ordinary meaning. *Murray v. Mo. Highway & Transp. Com'n*, 37 S.W.3d 228, 233 (Mo. banc 2001). When the intent of a statute cannot be determined from the plain and ordinary meaning of the words used and the statute is ambiguous, it should be given a reasonable reading and construed consistent with the legislature's purpose in enacting it. *Blue Cross & Blue Shield of Kansas City v. Nixon*, 26 S.W.3d 218, 228 (Mo.App. 2000). Insight into the legislature's objective can be gained by identifying the problems sought to be remedied and the circumstances and conditions existing at the time of enactment. *In the Interest of R.T.T.*, 26 S.W.3d 830, 834–35 (Mo.App. 2000).

The Act's application was limited to certain urban districts where there were serious concerns about academic achievement and whether traditional approaches of public education through the existing public school district system were best suited to correcting those problems. Charter schools, which could operate without traditional bureaucratic and legal constraints and could, perhaps, make more innovative and responsive curriculum changes, were seen as a possible benefit and a possible middle ground to traditional public schools and purely private schools. Obviously, the legislature was concerned that this experiment get a valid chance and, therefore, established a five-year minimum for char-

ters. Just as obviously, in our view, because of the experimental nature of this approach, the legislature specified that charters could be for no more than ten years. The legislature also wanted to give potential charter schools and sponsors some flexibility if they believed that a particular operation should have a term of more than five but less than ten years to evaluate its effectiveness.

We disagree with Westport, however, that we should and can look to parol evidence to determine the parties' 1999 intent as to the length of the charter. The Act clearly requires a statement of the term, which requirement Westport ignored when it submitted its proposed charter. Nor does the Act contemplate that any potential sponsor actually be required to become a sponsor let alone, we think, be committed to a term to which it has not expressly agreed.

 Based upon our review of the Act and the policy considerations underlying it, we conclude that the act must be narrowly construed. In our view, the legislature did not intend to commit sponsors and charter schools to a charter for more than a minimum period of five years, absent specific intent of the parties expressed within the charter. Thus, in situations where the charter fails to set out its term, we hold that the charter is limited to a five-year term, absent renewal by the parties.

Accordingly, Westport's charter was due to expire upon the passage of five years. This event occurred at the conclusion of the 2003–2004 school year. The trial court correctly concluded that the decision before the District was not whether to revoke Westport's charter. Rather, the decision the District was faced with was whether to renew that charter, and the District decided not to renew the charter.

### What Standards and Procedures Are Applicable to a Charter Renewal?

 The next stage of our inquiry requires us to determine what standards and procedures apply when a charter school has requested renewal of its charter. As outlined above, the Charter Schools Act expressly provides procedures for the charter approval and charter revocation processes. It does not, however, set forth any provisions that dictate what process must be followed regarding renewal of a charter.

 The trial court concluded that the statutory provisions applicable to initial charter applications applied to charter renewals, and we agree with the trial court's interpretation of the statute on this issue. To "renew" is "to make new or as if new again," "to repeat so as to reaffirm," or "to bring into being again" and "reestablish." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th Ed.2000). In the absence of some statutory right to renewal under particular conditions or by a particular procedure, Westport's renewal request could only be treated as a new charter application.

By way of review, in an initial charter application, the applicant submits the proposed charter to the sponsor, who has sixty days to provide written notice of its decision to approve or refuse the charter. We take particular note that there is no express statutory requirement that the sponsor hold a hearing regarding an initial charter application. Nor does the statute expressly provide for Chapter 536 judicial review of a prospective sponsor's decision regarding the applicant's charter.

Applying those procedures to the decision not to renew Westport's charter, we hold that the District complied with them. The undisputed facts here establish that the District requested that Westport submit a renewal application, and that an

application was submitted by Westport (it is immaterial that Westport styled that application as merely a "charter revision"). District then provided Westport written notice within sixty days of that application that the charter would not be renewed.

Just as the Charter Schools Act provides no express procedures for charter renewal, it also sets forth no standards, conditions, or criteria the sponsor must consider in making its decision with regard to renewal.[2] Nor does it make renewal automatic or grant either the sponsor or the charter school any right to renewal or an exclusive option regarding renewal.[3] The legislature has expressly imposed similar requirements or granted similar rights with regard to other renewal situations. It, therefore, clearly understands that such conditions may be placed upon renewal within a statute. That the legislature has not done so here, yields a clear legislative intent not to impose such criteria upon the sponsor's decision or to grant the charter school any right to renewal of its charter. *Accord, Conagra Poultry Co. v. Dir. of Revenue,* 862 S.W.2d 915, 917 (Mo. banc 1993).

### What Type of Judicial Review, If Any, Is Applicable to a Charter Renewal Decision?

 Having determined that the District decided not to renew Westport's charter, as opposed to having revoked that charter, we must examine the question of what procedures and, consequently, what type of judicial review (if any) is available to Westport regarding the District's choice

not to renew its charter. There is no express right to judicial review within the Charter Schools Act regarding the denial of a renewal. The question, then, is whether the District's denial of the renewal is subject to judicial review under MAPA and, if so, whether contested or noncontested case review is applicable. Determining whether an administrative proceeding is a contested or noncontested case is not left to the discretion of the administrative body, but is, rather, determined as a matter of law. *Bruemmer v. Mo. Dep't of Labor Relations,* 997 S.W.2d 112, 117 (Mo.App.1999).

 As discussed, *supra,* determining whether the decision of an administrative body is subject to contested or noncontested case review turns upon the question of whether a hearing was required by law. Westport argued in the proceedings below that it was entitled to contested case review because it had a right to a hearing alternatively under the Charter Schools Act or under due process considerations. If Westport was entitled to a hearing before the Board, then the trial court's grant of a preliminary injunction was facially correct, as it had the jurisdiction and, indeed, the duty to order the District to conduct a contested hearing. The trial court could properly hold the petition for contested case review in abeyance, pending the hearing and the development of a record to review.

 There is no statutory requirement within the Charter Schools Act that a

---

**2.** In some circumstances, the agency must consider certain information in determining whether to grant a renewal. *See, e.g.,* § 161.235.6, RSMo (suicide prevention program grants renewable based upon results of prior grants). In other renewal contexts, the legislature has stated that renewal is conditioned upon continued eligibility by a party. *See, e.g.,* § 173.250.5, RSMo (scholarship re-

newable provided student continues to meet eligibility requirements).

**3.** *Compare,* § 407.661(6), RSMo (rental purchase agreement is automatically renewable with each payment); § 144.062.2(5), RSMo (certificate for sales tax exemption for contractors performing work for exempt entity renewable solely at option of exempt entity).

sponsor grant a contested hearing upon a charter application, and, by extension, there is no similar requirement with regard to a charter renewal. Therefore, in order to be entitled to such a hearing, the applicant must have a protected property interest[4] with regard to renewal of its charter such that due process considerations require a hearing. *See State ex rel. Coffman v. Pub. Serv. Comm'n,* 121 S.W.3d 534, 539 (Mo.App.2003). Examples of such protected property interests include obtaining a high-school education or continued employment as a tenured professor. *See, e.g., Yarber,* 915 S.W.2d at 328 (state statutes yield protected property interest in high school education); *Byrd v. Bd. of Curators of Lincoln Univ. of Mo.,* 863 S.W.2d 873, 875 (Mo. banc 1993)(professorial tenure).

▇▇▇ Here, Westport has failed to provide a persuasive argument that it has any protected property interest with regard to the renewal of its charter. In our view, just as a prospective charter school has no protected property interest at stake regarding an initial charter application, the school also has no protected property interest under the Charter Schools Act with regard to renewal of its charter. We, therefore, conclude that the District was not required to hold a hearing prior to making its decision not to renew Westport's charter. Consequently, contested case review under Chapter 536, RSMo, is not available to Westport.

▇▇▇ Generally, if an administrative decision is not subject to contested case review, then an aggrieved party may seek noncontested case review. *See Mosley v. Members of the Civil Serv. Bd. for the City of Berkeley,* 23 S.W.3d 855, 859 (Mo.App. 2000). That does not mean, however, that every issue decided within a noncontested case is subject to judicial review. In *Mosley,* for example, the Eastern District held that a probationary, at-will state employee cannot seek noncontested case review regarding the adequacy of the grounds given for the employee's discharge. *See id.* at 859–60. The reasoning underlying that holding is that the probationary, at-will employee has no right to continued employment and can be discharged with or without cause. *See id.* at 859.

▇▇▇ The Charter Schools Act provides a charter school no right to charter renewal, nor does it set forth any conditions that must be triggered before a sponsor may decline to renew a charter. In our view, the sponsor may choose to decline renewal for cause or without cause. As in *Mosley* the adequacy of the sponsor's rationale, if any, for refusing to renew a charter is not a matter subject to judicial review.

▇▇▇ Even where the substance of a party's claims cannot be reviewed, that party may still have a right, in the presence of some statutory or rule-based procedural requirement, to seek non-contested case review upon the issue of whether the administrative body followed required procedures and whether the decision was lawful. *See id.* at 860. In *Mosley,* the appellate court held that the employee had a right to non-contested case review upon the limited issue of whether the employee's dismissal was procedurally proper. *See id.* That limited review was available, however, only because there was a question regarding whether the employer had complied with its own personnel rules regarding approval of the discharge. *See id.*

▇▇▇ Applying these principles to the case at bar, then, noncontested case review

---

4. *State ex rel. Yarber, supra,* indicates that due process will be required if the administrative decision affects a protected interest in *life,* *liberty, or property.* 915 S.W.2d at 328. The only issue, here, however, is whether there is a protected property interest at stake.

would be available, only to the extent that there is a genuine dispute as to whether proper procedures were followed by the District in determining whether to renew Westport's charter. As discussed above, the only applicable procedural requirement under the Charter Schools Act was that the District provide Westport written notice of its decision regarding renewal of the charter within sixty days of the renewal application. There is no dispute on the record that this was not satisfied. There is no argument that the District failed to follow any of its own rules or procedures in reaching its decision. In essence, the undisputed facts vitiate any claim by Westport that any required procedure was not followed by the District in reaching its decision not to renew Westport's charter. Westport was, therefore, not entitled to any judicial review of the District's decision not to renew the charter. The trial court, therefore, acted in excess of its jurisdiction in granting Westport's request for preliminary injunction.

We, therefore, grant the District's petition, and issue our Writ of Prohibition.

JAMES M. SMART, JR., Judge, and VICTOR C. HOWARD, Judge, concur.